El Pueblo, Demandante y Apelado, *v.* Bonhome et al., Acusados y Apelantes.

Apelación procedente de la Corte de Distrito de Arecibo en causa por delito de asesinato en primer grado.

No. 700.—Resuelto en abril 27, 1915.

Pruebas—Manifestaciones del Agredido.—No comete error un tribunal no permitiendo a un testigo declarar sobre manifestaciones que le hiciera el agredido, cuando tales manifestaciones no tienen relación lógica alguna con el acto cometido por el acusado.

Id.—Prueba sobre el Carácter y Reputación de una Persona—Defensa Propia.—La mala fama o reputación de una persona no se prueba con actos aislados cometidos por esa persona, sino demostrando la opinión que la comunidad tiene de ella, y la prueba ha de concretarse a su carácter en general, pues no es posible atacar la reputación de una persona probando que fué sentenciada por determinado delito. Sin embargo, como excepción a esta regla, cuando se alega la propia defensa entonces es permitida esa clase de prueba.

Nuevo Juicio—Malicia y Premeditación—Veredicto Contrario a Derecho y a las Pruebas.—En este caso se presentó por los acusados una moción de nuevo juicio fundada en que el veredicto era contrario a derecho y a las pruebas, que era necesario probar en el juicio la malicia y la premeditación, y se resolvió: que examinados los hechos era insostenible la alegación.

Los hechos están expresados en la opinión.

Abogado del Pueblo: *Sr. Salvador Mestre, Fiscal.*

Abogados de los apelantes: *Sres. Rossy & Guillermety.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

En el Tribunal de Distrito de Arecibo presentó su Fiscal acusación contra Juan Bonhome y José Bonhome por el delito de asesinato en primer grado y, celebrado el juicio, el jurado que conoció de la causa rindió su veredicto declarándolos a ambos culpables de asesinato en primer grado con atenuantes.

El día señalado para dictar sentencia, solicitaron los acusados que se les concediera un nuevo juicio, pretensión que fué negada por el tribunal quien los condenó a la pena de reclusión perpetua con trabajos forzados. De la sentencia y de la resolución denegatoria de nuevo juicio han apelado los sentenciados, pero no han presentado en este Tribunal Supremo alegato alguno para sostener su recurso, como dispone nuestro reglamento, y sus abogados se limitaron a informar oralmente y a presentar en ese momento una relación de citas de sentencias de distintos tribunales.

En tal situación este recurso y como existe en la transcripción de los autos una exposición de las pruebas aportadas al juicio y también un pliego conteniendo las excepciones tomadas durante él por los acusados se limitará nuestro trabajo a considerar esas excepciones, así como si debió concederse el nuevo juicio pedido por los acusados.

El hecho que se imputó a los apelantes y por el que fueron declarados culpables y sentenciados es el de que el día 24 de diciembre de 1913, voluntaria criminal e ilegalmente y con malicia premeditada y propósito firme y deliberado, atacaron alevosamente a Eloy Solares con revólvers cargados con balas, disparando ambos acusados contra dicho Eloy Solares con cada uno de sus revólveres e infiriéndole dos heridas mortales con bala, una en el torax, que le atravesó la aorta y otra en la región frontal, las que le produjeron la muerte a los pocos momentos de recibidas.

Durante el juicio, la defensa de los acusados presentó como prueba al testigo Teclo Marrero, quien empezó su tes-

timonio exponiendo que en la noche del 16 de diciembre de
1913, en cuyo día Eloy Solares salió de la cárcel de Arecibo,
tuvo una conversación con él y cuando trató el testigo de
relatar lo que le había dicho Eloy Solares se opuso a ello
el fiscal por ser de referencia y remota la conversación, pues
había tenido lugar nueve días antes de ocurrir los hechos
que motivan el juicio; objeción que sostuvo el tribunal y la
defensa hizo constar su excepción a tal resolución.

Lo que se trataba de probar con ese testigo era que al
manifestarle a Eloy Solares cuando salió de la cárcel que no
fuera a Manatí para evitar disgustos con los Bonhome, le
contestó Solares que iría para que no se le considerara co-
barde y porque la vida de él y la de Juan Bonhome estaban
mutuamente resguardadas por ellos mismos.

El tribunal no cometió error alguno al no permitir que
el testigo manifestase lo que le dijo Eloy Solares, porque
no tiene ninguna relación lógica con el acto cometido por
el acusado.

La otra excepción tomada por la defensa fué cuando el
tribunal se negó a admitirle dos certificaciones de condenas
impuestas a Solares, que presentó con el objeto de probar
el mal carácter del interfecto.

La mala fama o la mala reputación de una persona no
se prueba con actos aislados cometidos por esa persona, sino
demostrando la opinión que la comunidad tiene de ella y la
prueba ha de concretarse a su carácter en general pues no
es posible atacar la reputación de una persona probando que
fué sentenciado por determinado delito.  21 Cyc., 910.

Sin embargo, como excepción a esta regla, cuando se
alega la propia defensa entonces es permitida esa clase de
prueba, 21 Cyc., 908; pero en este caso ni se alegó la propia
defensa, ni hay en los autos la más leve indicación de que se
intentó probarla, ya que hasta sus propios testigos comprue-
ban una muerte alevosa, traicionera y premeditada.  No hubo,
pues, error en el tribunal inferior al negar la admisión de
esa prueba.

Pasando ahora a la resolución que negó el nuevo juicio reconocemos que el tribunal procedió correctamente al negar esa solicitud.

El fundamento de ella fué que el veredicto era contrario a derecho y a las pruebas, alegándose que es contrario a las pruebas porque era necesario probar en el juicio la malicia y la premeditación en cada uno de los dos acusados; que toda la prueba de cargo es que al enfrentarse Juan Bonhome con Eloy Solares, al mediodía en una calle de Manatí le hizo varios disparos con revólver al tiempo que Solares le tiraba piedras, causándole el cuarto disparo una herida de frente, estando Solares inclinado, que le rompió la oarta ocasionándole la muerte; que la prueba contra José Bonhome es que al sentir los disparos de su hermano Juan apareció en la calle y disparó sobre Solares cuando éste había caído al suelo para morir por consecuencia de la herida que le produjo Juan y que es incuestionable que no se ha probado la malicia ni la premeditación y que no hay criminalidad en cuanto a José porque disparó sobre una persona que ya no estaba viva.

No creemos que haya un hecho que más claramente sea constitutivo de asesinato en primer grado que el que estamos examinando, ni tampoco en el que pueda presentarse una prueba más clara, terminante y convincente del delito y de sus circunstancias, pues hasta los testigos de los acusados coinciden con los de la acusación en la forma cómo ocurrieron los hechos y no aportan al juicio otra cosa nueva que los disgustos anteriores entre uno de los apelantes y el interfecto.

Como la prueba es en extremo robusta, y no es contradictoria, nos limitaremos a hacer un resumen de los hechos tal como han sido probados.

Durante una huelga que en marzo de 1912 promovió Juan Bonhome en la fábrica de tabacos de Manatí como consecuencia de un disgusto que tuvo con un capataz, entró Eloy Solares a trabajar en dicha fábrica seguido de otros torcedores y por la tarde Solares pidió protección a la policía por haber

sido amenazado por Juan Bonhome. Por la noche hubo una cuestión entre ellos en la que Eloy Solares disparó cinco tiros a Juan Bonhome hiriéndole con cuatro, siendo éste condenado por ese hecho a cumplir la pena de un año y seis meses de cárcel por el delito de acometimiento y agresión con circunstancias agravantes y confirmada la sentencia por este Tribunal Supremo en 30 de abril de 1913. En 16 de diciembre del mismo año fué puesto Solares en libertad por haber sido indultado y regresó a Manatí. Páginas 26, 27 y 22.

Después de ese disgusto Juan Bonhome dijo a José Márquez Muriel (páginas 21 y 22) quien era del mismo color de Solares y un poco más bajo, pero más grueso, que anduviera con cuidado porque si no lo hubiera visto por el pescuezo, por detrás, lo hubiera matado creyendo que era Solares, a quien lo mataba si lo cogía: cuando Solares fué a la cárcel, hablando Juan Bonhome con Bienvenido Laguna le dijo (página 23) que tenía que vengarse de Solares por la cicatriz que le había hecho en el ojo y por los dientes que le faltaban y que le iba a regalar cuatro bombones de plomo; algunos días ante de ser muerto Solares también dijo a Luis Robles (página 24) que aquél le había regalado cuatro bizcochos y que él iba a regalarle ocho; a Manuel Vanga (página 23) en los días en que Solares había llegado a Manatí, el 19 del mes en que murió, que los tiros que tenía en la nariz tenía que desquitárselos matando a Solares; el día que indultaron a Solares oyó Antonio La O (página 22) una conversación entre los dos acusados en la que Juan preguntaba a José si habían indultado a Solares, diciendo entonces que si Solares le había disparado cuatro tiros él le dispararía ocho en cuanto llegara. Además Nicolás Santana, mecánico, (página 21) compuso un revolver Smith, que reconoció ser el ocupado a José Bonhome, que le llevaron en la noche del 19 de diciembre de 1913 los dos hermanos Bonhome para que lo compusiera y cuando dos días después volvieron a buscarlo por la noche los dos hermanos, lo cogió Juan, hizo girar varias veces la maza sin bala, dijo a Santana que era de su hermano Pepe,

quien también lo hizo girar, y le dijo Juan a Pepe: "¿qué tal está, está seguro, fallará?;" manifestándoles entonces Santana que él respondía de su trabajo.

Con respecto a la manera como se desarrollaron los hechos el día 24 de diciembre de 1913 resulta que estando al mediodía hablando en la calle del Pozo de Manatí Eloy Solares con Andrés Larregui (a) Nangó, (página 8) recostado del caballo que éste montaba y con la chaqueta al hombro se acercó Higinio Pastoriza para entregarle una carta, diciéndole éste que no se parara con tanta confianza por que el que tiene enemigos no duerme, en cuyo momento sonó una detonación hecha con revólver por Juan Bonhome estando Solares de espalda y luego le disparó otros tres más mientras Solares se retiraba y le tiraba piedras que cogía del suelo en uno de cuyos momentos fué herido en el pecho, y presentándose entonces por la calle del Pozo José Bonhome con un revólver en la mano, varios peones que por allí estaban avisaron a Solares, que estaba guarecido detrás de un almendro, que huyese porque lo mataba José Bonhome y mientras Solares salía de la plaza de Manatí saltando un pretil para refugiarse en la casa del Sr. Brunet, le disparó varios tiros José Bonhome haciéndole el último cuando ya había caído Solares en el zaguán del Sr. Brunet, pagándoselo en la frente.

Cuando momentos después llegó el Dr. Blásquez aun estaba vivo Solares pero murió casi en seguida. La herida del pecho le rompió la aorta, la recibió estando en un plano más bajo que el agresor y aun cuando era mortal por necesidad no produjo la muerte inmediata; la de la frente la recibió en segundo término estando en el suelo, era también mortal por necesidad y produjo la muerte a los pocos momentos.

Basta esta relación de hechos para comprender que es insostenible cualquiera alegación que se haga respecto a si está probada o nó la premeditación y la malicia en cada uno de los apelantes y mucho menos sostener, como hacen sus abogados, que José Bonhome disparó sobre una persona que

ya estaba muerta, cuando no hay un solo dato que sostenga esa afirmación, ni de donde pueda siquiera deducirse.

La sentencia apelada debe ser confirmada.

> *Confirmada la sentencia apelada y la orden denegando nuevo juicio.*

Jueces concurrentes: Sres. Asociados Wolf, del Toro y Hutchison.

El Juez Presidente Sr. Hernández no intervino.